UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**Michele M. Leo**<br><br>          Debtor | Chapter 11<br><br>Case Nos. 13-20157 & 13-20942 |
| In re:<br><br>**Ralph Leo**<br><br>          Debtor | (JOINTLY ADMINISTERED) |

## DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION DATED DECEMBER 17, 2013

### ARTICLE I
### SUMMARY

Debtor Michele Leo ("Michele") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Code") on March 6, 2013 (the "Michele Petition Date").  Debtor Ralph Leo ("Ralph") filed a voluntary petition for relief under Chapter 11 of the Code on September 11, 2013 (the "Ralph Petition Date"). Since the Petition Dates, Michele and Ralph (collectively, the "Debtors") have continued as debtors-in-possession pursuant to Section 1107 of the Bankruptcy Code.  By order entered on October 15, 2013 [DE #33], the Court ordered that the two bankruptcy cases of Michele Leo and Ralph Leo be jointly administered as Chapter 11 Case No. 13-20157, and that all future filings, except claims, should be filed under that docket.  ***The Court also ordered that claims against Ralph should be filed in Ralph's case, Case No. 13-20942, and that claims against Michele  should continue to be filed in Michele's case, Case No. 13-20157, but that all other pleadings should henceforth be filed in Case No. 13-20157.  This Plan calls for the limited substantive consolidation of the Debtors' estates, as set forth more fully below.***  To the extent required, the Debtors move this Court to enter an order substantively consolidating the Debtors on the limited basis set forth more fully below.

The Debtors are presently engaged in the operation of gas stations located in

Westbrook, Biddeford, Arundel, and Saco, Maine (collectively, the "Stations") and the

distribution of heating oil in Cumberland and York Counties under the names of

"Holly's" and "Holly's Supergas") (the "Business").  Ralph also operated a used car sales venture under the name "Ralph's Used Cars."

During the operation of the Business, Ralph and Michele created several limited liability companies, which included Hollys, LLC, Holly's II, LLC, and Holly's III, LLC, and these companies owned various assets of the Business.  In 2013, prior to the commencement of Ralph's case, Ralph and Michele transferred all assets from the entities to each other, leaving the entities asset-less.  Presently, Ralph and Michele jointly own the majority of the assets of the Business including several fuel delivery trucks, and the real estate on which the Stations are located.  Whatever assets are not owned jointly, are owned individually by one or the other of the Debtors.  Collectively, they jointly or separately own all of the assets of the Business and employ approximately 35 employees though that number rises in the winter heating season.

This Joint Plan of Reorganization (the "Plan") under Chapter 11 of the Code proposes to pay creditors of Debtors Michele Leo and Ralph Leo from Plan Cash (as defined below) to be derived from presently held cash as well as future income.

**This Plan calls for the limited substantive consolidation of the Debtors' estates, pursuant to which the Debtors shall continue joint business operations to generate a single pool of Plan Cash with which to fund the Plan and its anticipated future distributions of Plan Cash to holders of Allowed Administrative and Priority Tax Claims, as well as General Unsecured Claims under Class J-9 of the Plan (which general unsecured claims are treated as a single pool of claims).  The Debtors through their joint business operations will also fund payments on the Class R-3 secured claim (secured by collateral used in the joint business) and their joint secured claims (Classes J-1 through J-6), but the limited substantive consolidation will not affect, modify, discharge, reduce or expand the lien, mortgage or security interest of any secured creditor, nor shall the limited substantive consolidation of the Debtors' estates alter the Debtors' respective ownership interests in property of their estates, Following confirmation, the assets that were jointly owned by the Debtors prior to confirmation  shall remain vested in the Debtors jointly (each with a 50% ownership interest, held as a tenant in common), whereas**

2

*those assets that were owned prior to confirmation by each individual Debtor in his or her own right, separate from the other, shall remain vested separately in each individual Debtor following confirmation. INTERESTED PARTIES ARE HEREBY REFERRED TO SECTION IV C AND EXHIBITS F-1, F-2 AND F-3 TO THE DISCLOSURE STATEMENT ACCOMPANYING THIS PLAN, WHICH MORE PARTICULARLY IDENTIFY THE DEBTORS' RESPECTIVE INTERESTS IN PROPERTY OF THE ESTATES (INCLUDING THEIR RESPECTIVE PERCENTAGE OWNERSHIP INTERESTS IN JOINTLY HELD ASSETS).*

*The Debtors believe that the facts of this case dictate the above described limited substantive consolidation, which is also in accord with current law.  Substantive consolidation has no effect on any class of creditors, other than the holders of allowed administrative claims against the Debtors, unsecured creditors and tax claims, which classes of claims have their positions enhanced by limited substantive consolidation and the creation of a joint business fund of Plan Cash with which those claims are to be paid (each in a single pool), as more fully set forth below and in the Plan.*

*This Plan provides for twenty-two (22) classes of secured (or previously secured) claims; one (1) class of general unsecured claims; and two (2) classes of equity security holders. The  Plan provides that the Debtors through Michele's Counsel will contribute cash totaling $1,250,000 ("Plan Cash") to be distributed through a total of seven distributions (an initial distribution of $50,000 (the "Initial Distribution"), and six subsequent annual distributions estimated to be $200,000 each (collectively, the "Annual Distributions") to holders of Allowed Administrative, Priority Tax, and General Unsecured Claims.*

The Plan Proponents (the Debtors), currently project that general unsecured creditors holding allowed claims under joint Class J-9 of the Plan will receive an overall dividend, through the projected Annual Distributions of Plan Cash, valued at approximately twenty-six cents

3

(26.94%) on the dollar, as follows:[1]

First, upon entry of the Confirmation Order, the State of Maine Bureau of Revenue Services ("Maine Revenue") shall have an Allowed Priority Tax Claim in the Amount of $340,281.25 (the "Maine Revenue Allowed Priority Tax Claim"), which will be paid in full (with interest at the rate of 7% per annum to be paid through the Fourth Annual Distribution), within five (5) years after the Michele Petition Date.[2]  The balance of the Maine Revenue claims will be treated as general unsecured claims under Class J-9 of the Plan.

Second, upon entry of the Order confirming the Plan, the United States of America, Internal Revenue Service ("IRS"), shall have an Allowed Priority Tax Claim in the Amount of $3,500 (the "IRS Allowed Priority Tax Claim"), which claim will be paid in full (with interest at the rate of 3% per annum to be paid through the Fourth Annual Distribution), within five (5) years after the Michele Petition Date.[3]

---

[1]  Based on currently available information, the Debtors, at this time, project that holders of Allowed Unsecured Claims will be paid a total dividend of approximately 26.94 % of the face amount of their claims through the six projected Annual Distributions.  **FOR FURTHER INFORMATION CONCERNING HOW THE DEBTORS' ESTIMATED THIS PROJECTED DIVIDEND.INTERESTED CREDITORS SHOULD REFER TO FOOTNOTE 1 OF THE DISCLOSURE STATEMENT (AND EXHIBIT B TO THAT DISCLOSURE STATEMENT) TO BE SERVED ON CREDITORS WITH THIS PLAN. (That Disclosure Statement and accompanying exhibits are collectively referred to herein as the "_Disclosure Documents_").**  Creditors are cautioned that the foregoing dividend analysis is an **estimated projection only**, and the actual dividend amount may change as claims are filed and become allowed or disallowed and the total amount of all allowed claims is known.  **IMPORTANT NOTE:  THE PLAN PROVIDES FOR THE TREATMENT OF CLAIMS AGAINST MICHELE AND RALPH IN A SINGLE POOL, FOR DISTRIBUTIONS BASED ON THAT SINGLE POOL, TO CREDITORS HOLDING ALLOWED CLAIMS AGAINST MICHELE AND/OR RALPH.  THE PROJECTED DIVIDEND IS BASED ON THE FOREGOING ASSUMPTIONS.**

[2]  **Interested creditors should refer to the Disclosure Documents, and in particular Exhibits B, C, and D thereto, for more information on the projected amounts and timing of distributions.**

[3]  **Interested creditors should refer to the Disclosure Documents, and in particular Exhibits B and E thereto, for more information on the projected amounts and timing of distributions.**

The balance of the IRS claims will be treated as general unsecured claims under Class J-9 of the Plan.

_Third,_ upon entry of the Confirmation Order, the following entities (the "503(b)(9) Creditors") who are holders of section 503(b)(9) claims totaling in the aggregate $423,003, for goods delivered to Holly's within 20 days prior to the Michele Petition date, which the Plan proposes to allow in the following amounts, to be treated as follows: (1) Dennis K. Burke ($210,483.26); (2) Global ($167,020.86); and (3) Gulf Island, LP, d/b/a Great Island Energy ($45,498.93), all of which will be paid in full, without interest, in six installments (through the Initial and First through Fifth Annual Distributions).[4] **_These claims are referred to in the aggregate as the "Allowed 503(b)(9) Claims."_**

_Fourth,_ the Plan will have an administrative reserve (the "Fee Reserve") in the amount of $95,000 to be used for present and future administrative claims, for outstanding fees, and for future Chapter 11 fees (collectively, "Counsel Fees"[5]), all of which are subject to Court approval.  The $95,000 reserve in Counsel Fees will be disbursed to Counsel in seven installments.[6]

_Fifth,_ on or before the date (the "Initial Distribution Deadline") that is 120 days after the Effective Date of the Plan, the Debtors through their business operations  shall make an initial contribution of $50,000, which will be distributed

---

[4]  Interested creditors should refer to the Disclosure Documents, and in particular **Exhibit B** thereto, for more information on the projected amounts and timing of distributions.

[5] **_The Debtors and their  undersigned counsel have agreed that any outstanding Counsel Fees and future Counsel Fees, all of  which are subject to Court approval, will be spread out over the life of the Plan so that unsecured creditors holding Allowed Unsecured Claims will receive on account of such claims their pro rata share of each Annual Distribution._  Counsel reserve the right to petition the Court at the time of discharge for an additional award of accrued, unpaid fees and expenses then due.**

[6]  Interested creditors should refer to the Disclosure Documents, and in particular **Exhibit B** thereto, for more information on the projected amounts and timing of distributions.

through the Initial Distribution by Michele's Counsel to pay (A) $20,000 of the Fee Reserve to Debtors' Counsel; (B) $20,000 to the 503(b)(9) Creditors, to be distributed to them pro rata as a first installment of their Allowed 503(b)(9) Claims; and (C) the $10,000 balance of funds remaining from the Initial Distribution after the foregoing payments shall be distributed as initial installments on the principal portions of the Maine Revenue and IRS Allowed Priority Tax Claims, <u>pro rata</u>. [7] <u>No other creditors will receive funds from the Initial Distribution</u>.

<u>Sixth</u>, to fund the Plan, beginning after completion of the Initial Distribution, the Debtors through their joint consolidated business operations will make periodic payments to Michele's Counsel totaling $200,000 annually, for six years, from which $1,200,000 fund Michele 's Counsel will make the six Annual Distributions, to commence within one year after the Initial Distribution Deadline, which will be used to pay: [8]

(A)    six (6) annual Counsel Fee installments to Debtors' Counsel ($50,000 in year one; and $5,000 per year in years two through six) from the Fee Reserve, subject to Court approval;

(B)    five (5) annual distributions aggregating approximately $423,003 to the 503(b)(9) Creditors holding Allowed 503(b)(9) Claims, <u>pro rata</u>, until such claims are paid in full, without interest;

(C)    the remaining four (4) annual principal payments  sufficient to satisfy in full the principal portions of the Maine Revenue and IRS Allowed Priority

---

[7]  **Interested creditors should refer to the Disclosure Documents, and in particular <u>Exhibits B through E</u> thereto, for more information on the projected amounts and timing of distributions.**
[8]  **Interested creditors should refer to the Disclosure Documents, and in particular <u>Exhibits B through E</u> thereto, for more information on the projected amounts and timing of distributions.**

Tax Claims (through the First, Second, Third and Fourth Annual Distributions),
with Interest on such tax claims to be paid through the Fourth Annual Distribution,
with all distributions thereby to be completed within five (5) years after the Michele
Petition Date;

(D)     General Unsecured Creditors holding Allowed Unsecured Claims in
Class J-9  will receive pro rata distributions of Plan Cash through each of the six (6)
Annual Distributions, projected as follows: (1)  approximately $2,000 per year from
the First, Second and Third Annual Distributions; (2) approximately $3,000 from
the Fourth Annual Distribution; (3) approximately $107,000 from the Fifth Annual
Distribution: and (4) approximately $195,000 from the Sixth Annual (Final
Distribution).

The First Annual Distribution shall be made on or before twelve (12) months
after the Initial Distribution Deadline, and the Sixth  Annual (Final) Distribution will be
made on or before seventy-two (72) months after the Initial Distribution Deadline,
expected to be on or before June 30, 2020.  As stated above, distributions on the Maine
Revenue and IRS Allowed Priority Tax Claims shall be completed on or before March 6,
2018 (five years after the Michele Petition Date), and the Allowed Section 503(b)(9)
claims shall be paid in full, without interest, on or before completion of the Fifth Annual
Distribution, which means that the Sixth Annual (Final) Distribution is expected to be
dedicated solely to Counsel Fees ($5,000) and Class J-9 (the general unsecured, non-
priority class) ($195,000).  Upon completion of the Initial Distribution, and each
subsequent Annual Distribution, Michele's counsel shall transmit a disbursement report

to the U.S. Trustee's Office.[9]

**IMPORTANT NOTE: AT OR PRIOR TO THE HEARING ON CONFIRMATION OF THIS PLAN, THE DEBTORS MAY EXECUTE AND DELIVER TO THE 503(b)(9) CREDITORS PROMISSORY NOTE(S) IN FORM AND SUBSTANCE ACCEPTABLE TO THE DEBTORS AND THE RESPECTIVE 503(b)(9) CREDITORS, WHICH PROMISSORY NOTE(S) (1) SHALL BE FILED WITH THE COURT PRIOR TO THE CONFIRMATION HEARING, AND INCORPORATED IN FULL BY REFERENCE IN THIS PLAN AND CONFIRMATION ORDER; AND (2) WILL CONTAIN ADDITIONAL UNDERTAKINGS BY THE DEBTORS, INCLUDING, INTER ALIA, PROVISIONS FOR (A) THE PAYMENT OF INTEREST ON THE ALLOWED 503(b)(9) CLAIMS IN THE EVENT THE DEBTORS FAIL TO TIMELY COMPLETE (OR DELAY) ALL OR ANY PORTION OF ANY SCHEDULED ANNUAL DISTRIBUTION; AND (B) SUCH OTHER ADDITIONAL PROVISIONS AS THE DEBTORS AND THE 503(b)(9) CREDITORS OTHERWISE AGREE TO.  THE PROVISIONS OF THE ACTUAL PROMISSORY NOTE(S) TO BE EXECUTED BY THE DEBTORS SHALL CONTROL IN THE EVENT OF ANY DISCREPANCY BETWEEN SUCH PROVISIONS AND THIS SUMMARY,**

***All creditors and equity security holders should refer to***

---

[9]  *Payments to creditors holding Allowed Secured Claims will be paid as they become due directly by the Debtors, as specified in this Plan, except as otherwise expressly provided in this Plan or agreed to by the Secured Creditors.*

***Articles IV through VII of this Plan for information regarding the***

***precise treatment of their claim.*** A disclosure statement that provides

more detailed information regarding this Plan and the rights of creditors and

equity security holders has been circulated with this Plan. The Debtors believe

that the Plan provides for fair and equitable treatment of all claims and that

the Plan is in the best interests of all creditors, and parties in interest. **Your**

**rights may be affected. You should read these papers carefully and**

**discuss them with your attorney, if you have one. (If you do not have**

**an attorney, you may wish to consult one).**

**IMPORTANT NOTICE: THE DISCLOSURE STATEMENT THAT
ACCOMPANIES THIS PLAN CONTAINS IMPORTANT INFORMATION
WITH RESPECT TO THIS PLAN, INCLUDING, INTER ALIA,
INFORMATION CONCERNING YOUR ELIGIBILITY TO VOTE FOR
THIS PLAN.**

## ARTICLE II
## DEFINITIONS

Definitions and Rules of Construction. The definitions and rules of
construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or
construed in the Code are used in this Plan, and they are supplemented by the
following definitions. Unless the context otherwise requires, the following terms shall
have the following meanings when used in initially capitalized form in this Plan. Such
meanings shall be equally applicable to both the singular and plural forms of such
terms. Any term used in initially capitalized form in the Plan that is not defined
herein but that is defined in the Bankruptcy Code shall have the meaning ascribed to
such term in the Bankruptcy Code.

2.1      Administrative Claim shall mean a claim allowable under Section 503(b)
of the Bankruptcy Code with respect to the Debtors, or either of them, including charges
against the Debtors' estates under 28 U.S.C. § 1930 and Fee Claims.  503(b)(9) Claim
shall mean a claim allowable under Section 503(b)(9) of the Bankruptcy Code with
respect to the Debtors, or either of them.  "503(b)(9) Creditors means the following
creditors who are holders of section Allowed 503(b)(9) claims totaling in the aggregate
$423,003, for goods delivered to Holly's within 20 days prior to the Michele Petition
date,  in the following amounts: (1) Dennis K. Burke ($210,483.26); (2) Global
($167,020.86); and (3) Gulf Island, LP, d/b/a Great Island Energy ($45,498.93).

2.2     <u>Allowed,</u> with respect to a Claim or Interest, shall mean any Claim or Interest (a) that is the subject of a timely filed proof of claim; or (b) any Claim or Interest that has been listed in the schedules filed with the Bankruptcy Court by the Debtor pursuant to Bankruptcy Code Section 521 and is not listed therein as disputed, unliquidated or contingent, and, in each such case as to which either (i) no objection to the allowance thereof or other similar pleading has been filed within the applicable time period set forth in Article VI of the Plan, or (ii) an objection or other similar pleading has been filed and the Claim or Interest has been allowed by a Final Order but only to the extent so allowed; or (c) with respect to a Fee Claim incurred prior to the Confirmation Date, a claim that has been allowed by a Final Order of the Bankruptcy Court.

2.3     <u>Annual Distributions</u> shall mean the cash distributions to be made once annually commencing one year after the Initial Distribution Deadline, and projected to be in the amount of $200,000 each, to be distributed to holders of Allowed Administrative, Priority Tax, and General Unsecured Claims, <u>pro rata</u>. Annual Distributions shall be made until the total $12,500,000 of Plan Cash has been distributed. This Plan also refers to Annual Distributions in consecutive order as "First Annual", "Second Annual", "Third Annual", "Fourth Annual", "Fifth Annual" and "Sixth Annual".

2.4     <u>Allowed Amount</u> shall mean the amount of any Allowed Claim or Allowed Interest.

2.5     <u>Bankruptcy Code</u> shall mean 11 U.S.C. § 101 *et seq.,* as in effect with respect to the Cases on the date of filing of this Plan. All "Code" references herein are to the Bankruptcy Code, unless otherwise stated.

2.6     <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the District of Maine, or any other court with jurisdiction over the Cases.

2.7     <u>Bar Date</u> shall mean, as to Claims held by persons or entities other than Governmental Units, July 8, 2013 (for Claims against Michele) and January 6, 2014 (for Claims against Ralph); <u>and shall mean,</u> as to Claims held by Governmental Units, September 3, 2013 (for Claims against Michele) and March 10, 2014 (for Claims against Ralph).

2.8     <u>Business</u> means the business jointly owned and operated by Debtors Michele and Ralph, under the names "<u>Holly's</u>" and "<u>Holly's Supergas</u>."

2.9     <u>Case(s)</u> shall mean the chapter 11 cases entitled <u>In re Michele Leo, Chapter 11 Case No. 13-20157</u>, and <u>In re Ralph Leo, Chapter 11 Case No. 13- 20942</u>, which are being jointly administered under Case No. 13-20157, pending in the Bankruptcy Court.

2.10    <u>Cash</u> shall mean payment, including by check, issued by or on behalf of the Debtor with respect to any payment required to be paid pursuant to the Plan.

2.11    INTENTIONALLY LEFT BLANK.

2.12    Claim shall mean a claim, as defined in Bankruptcy Code Section 101(5), against the Debtors or either of them.

2.13    Confirmation Date shall mean the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

2.14    Confirmation Order shall mean the Order (which need not be a Final Order) confirming the Plan pursuant to Bankruptcy Code Section 1129.

2.15    Counsel Fees means Fee Claims of Counsel to the Debtors, which are subject to Court approval.

2.16    Debtors shall refer to the debtors in these jointly administered Chapter 11 bankruptcy cases: (1) Michele Leo, also formerly known as Michele Leo Simonoko; and (2) Ralph Leo.

2.17    Effective Date shall mean the date determined in accordance with Article IX of the Plan.

2.18    Encumbrances shall mean all liens, encumbrances, mortgages, hypothecations, pledges, and security interests of any kind whatsoever.

2.19    Executory Contract shall mean an executory contract within the meaning of it U.S.C. § 365.

2.20    Fee Claim shall mean the Administrative Claim of a professional person for compensation and/or reimbursement of expenses, and shall include Counsel Fees (as defined in Section I above).

2.21    Fee Reserve shall mean the administrative reserve created under the Plan for Fee Claims, in the amount of $95,000 to be used for present and future administrative claims, for outstanding fees, and for future Chapter 11 fees.

2.22    Final Order shall mean an order or judgment of any court, administrative agency or other tribunal as entered on its docket as to which (a) the time to appeal or petition for rehearing or certiorari has expired and as to which no appeal or motion for rehearing or petition for certiorari has been timely filed or taken, (b) if such an appeal or motion for rehearing or petition for certiorari has been timely filed or taken, such order or judgment has been affirmed by the highest tribunal in which review was sought or such appeal, motion for rehearing or petition for certiorari was dismissed or otherwise terminated without modification of such order or judgment, and the time has expired within which any further proceeding for review may be commenced.

2.23    Initial Distribution shall mean the amount of $50,000 to be made within 120 days after the Effective Date.

2.24    Initial Distribution Deadline shall mean the date that is 120 days after the Effective Date.

2.25    <u>IRS</u> means the United States of America, Internal Revenue Service

2.26    <u>IRS Allowed Priority Tax Claim Maine Revenue Allowed Priority Tax Claim</u> means an Allowed Priority Claim under section 507(a)(8) of the Code, in the amount of $3,500, which will be paid in full (plus interest at the rate of 3% per annum to be paid through the Fourth Annual Distribution), within five (5) years after the Michele Petition Date.

2.27    <u>Maine Revenue</u> means the State of Maine Bureau of Revenue Services.

2.28    <u>Maine Revenue Allowed Priority Tax Claim</u> means an Allowed Priority Claim under section 507(a)(8) of the Code, in the amount of $340,281.25, which will be paid in full (plus interest at the rate of 7% per annum to be paid through the Fourth Annual Distribution), within five (5) years after the Michele Petition Date.

2.29    <u>Michele</u> refers to Debtor Michele Leo, also formerly known as Michele Leo Simonoko.

2.30    <u>Michele Bar Date</u>:  <u>See</u> entry under "Bar Date" above.

2.31    <u>Michele Petition Date</u> shall mean March 6, 2013.

2.32    <u>Order</u> shall mean an order of the Bankruptcy Court.

2.33    <u>Plan</u> shall mean this Joint Plan of Reorganization, as it may be amended or modified by the Debtors from time to time, together with all exhibits, schedules and other attachments hereto, as the same may be amended or modified by the Debtors from time to time, all of which are incorporated herein by reference.

2.34    <u>Plan Cash</u> shall be an amount of cash equal to $1,250,000 (Including the $50,000 Initial Distribution), which shall be used to fund the distributions to be made under the Plan and shall be derived from funds available to the Debtors at the time of the Initial Distribution, and from future income.   During the pendency of the Plan, the Debtors shall make periodic payments into Debtors' Counsel's Chapter 11 Trust Account, and such funds shall be distributed to creditors through an Initial Distribution and Six (6) Annual Distributions, all as more specifically provided for in this Plan.

2.35    <u>Priority Claim</u> shall mean an Unsecured Claim arising before the Petition Date and entitled to priority under Section 507(a)(2) through 507(a)(9) of the Bankruptcy Code.

2,36    <u>Post-petition Bar Date</u> shall mean the date that is sixty (60) days following the Confirmation Date.

2.37    <u>Ralph</u> refers to Debtor Ralph Leo.

2.38    <u>Ralph Bar Date</u>:  <u>See</u> entry under "Bar Date" above.

2.39    <u>Ralph Petition Date</u> shall mean September 11, 2013.

2.40   <u>Secured Claim</u> shall mean a claim that is secured by a perfected (or similarly binding) Encumbrance on the assets of the Debtor, to the extent provided in 11 U.S.C. § 506.

2.41   <u>Unexpired Lease</u> shall mean a lease that has not expired or terminated within the meaning 11 U.S.C. § 365.

2.42   <u>Unsecured Claim</u> shall mean a Claim which arose before the Petition Date and which is not secured by any interest in any asset in the Debtors' estates, and shall include a Claim which arises from the rejection of an Executory Contract or Unexpired Lease, within the meaning of Section 365 of the Bankruptcy Code.

**<u>ARTICLE III</u>**
**<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>**

**<u>3.01</u>: <u>JOINT CLASSES</u>:**

<u>Class J-1</u>.          Saco & Biddeford Savings Institute Allowed Secured Claim of $470,097.46, fully secured by the following collateral (collectively, the "<u>SBSI Joint Collateral</u>"):  (1) Arundel Property owned by Michele & Ralph ($300,000); (2) Michele's 2004 KW ($38,000); (3) Michele's other 2004 KW ($38,000); (4) Michele & Ralph's Jointly Owned 2005 Heil ($35,000); (5) Michele's 2005 KW ($23,000); and (6) Lien Balance of $36,097.46 secured by 3rd Mortgage on Michele's Gorham Residence (Book 28505, Page 2) (leaves equity in Michele's Gorham property, for liquidation purposes, of $20,012.79).  See <u>Exhibit F-1</u> for allocation of assets to liens.

<u>Class J-2</u>.          Me CAP Allowed Secured Claim of $140,000, fully secured by Saco property owned by Ralph and Michele (formerly Holly's III).

<u>Class J-3</u>.          Key Bank Allowed Secured Claim of $165,815, fully secured by Michele's Biddeford property (Mortgage recorded at Book 14014, Page 575) and Ralph's Westbrook property.  See <u>Exhibit F-2</u> for allocation of assets to liens.

<u>Class J-4</u>.          Pacaar Secured and Unsecured Claims, partially secured by 2012 Kenworth Truck ($78,000 value).

<u>Class J-5</u>.          Pacaar Secured and Unsecured Claims, partially secured by 2011 Kenworth Truck ($107,000 value).

<u>Class J-6.</u>          Daimler CFS Allowed Secured Claim of $20,056.06, fully secured by  Jointly Owned 2008 Freightliner

13

| Class J-7. | Daimler CFS previously secured claim, previously secured by 2009 Freightliner.  CLAIM SATISFIED IN FULL |
|---|---|
| Class J-8. | Bank of America, N.A., Secured and Unsecured Claims, secured by Mercedes Benz which has been surrendered |
| Class J-9. | All general unsecured claims allowed under § 502 of the Code.  Class J-9 shall consist of all Allowed Unsecured Claims, but except as otherwise stated in this Plan, this Class shall not include (i) Claims included in another class; or (ii) unclassified Claims whose treatment is specified in Article IV of the Plan. |

## 3.02: MICHELE LEO CLASSES

| Class M-1. | Bangor Savings Bank Allowed Secured Claim of $394,526.31, fully secured by first mortgage on Michele's Gorham Residence, by virtue of a Mortgage recorded in the Cumberland County Registry of Deeds in Book 26998, Page 51 |
|---|---|
| Class M-2. | Bangor Savings Bank Allowed Secured Claim of $109,363.44, fully secured by second mortgage on Michele's Gorham Residence, by virtue of a Mortgage recorded in the Cumberland County Registry of Deeds in Book 26998, Page 69 |
| Class M-3. | Secured and unsecured  claims of City of Saco, secured by virtue of statutory liens for unpaid real estate taxes against Michele's real estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347). |
| Class M-4. | Secured claims of One West Bank [See Claim Transfer at DE # 91, referencing transfer of Claim 2 [sic] to Ocwen Loan Servicing, LLC, secured by first mortgage against Michele's real estate at Smutty Lane, Saco, Maine,  by virtue of Mortgage from Michele to Evest Lending, Inc.,  recorded in the York County Registry of Deeds in Book 15093, Page 349, against Michele Leo's real estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347). |
| Class M-5. | Secured claims of Green Tree Servicing LLC, secured by second mortgage against Michele's real estate at Smutty Lane, Saco, Maine, by virtue of a Mortgage from Michele to National City Mortgage, a division of National City Bank, recorded in the York County Registry of Deeds in Book 15093, Page 372, and assignments recorded in Book 15180, |

Pages 240 and 241 , against Michele Leo's real estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347).

Class M-6.     Secured and unsecured claims of Keybank, N.A., secured by virtue of a UCC-1 financing statement from Debtor Michele M. Leo to Keybank, National Association; **File #:** 2080001937526, secured by personal property (2008 Infinity 20 x 40) located At 45 Smutty Lane, Saco, Maine (Book 15093, Page 347).

Class M-7.     Secured and unsecured claims of the State of Maine, Department of Labor, previously purportedly secured by lien that has been satisfied and discharged.

Class M-8     The interests of individual Debtor and "Equity Security Holder" Michele Leo in property of her estate.

## 3.03:  RALPH LEO CLASSES

Class R-1.     Saco Biddeford Savings Institution, Allowed Secured Claim of $723,000, fully secured by first mortgage against Ralph's mixed use real estate located at 80 Dow Road, Gorham, Maine.

Class R-2.     Secured and Unsecured Claims of Scott A. Guimond and Kathleen M. Guimond, purportedly secured by  Ralph's mixed use real estate  located at 80 Dow Road, Gorham, Maine.

Class R-3.     Secured Claims of Key Bank in the amount of $50,000, fully secured by 2nd mortgage against Ralph's real estate in Westbrook, Maine

Class R-4     Secured and unsecured claims of Ally, partially secured by Ralph's 2013 GMC 1-ton Sierra Denali (VIN #1GT426E89DF130116)

Class R-5     Secured and unsecured claims of Ally, partially secured by Ralph's 2013 GMC 1-ton Sierra Denali (VIN # 1GT426C8XDF110265)

Class R-6     Secured and unsecured claims of Bank of America, secured by Ralph's repossessed 2004 Dutch Star

Class R-7     Secured and unsecured claims of Fifth Third Bank, secured by Ralph's repossessed Renegage Trailer

Class R-8     The interests of individual Debtor and "Equity Security Holder" Ralph Leo in property of his estate.

## ARTICLE IV

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,. U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS

4.01  <u>Unclassified Claims.</u> Under Code section 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

4.02  <u>Administrative Expense Claims.</u> Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed by the holder of the claim and the Debtors. Counsel to the Debtors shall be paid Counsel Fees as an administrative expense claim from the Initial Distribution and from Plan Cash, subject to Court order(s) approving such fees, as specified in Article I above.

4.03  <u>Priority Claims.</u>  Except as otherwise agreed by the Debtors and the holder of an Allowed Priority Claim, the holder of an Allowed Priority Tax Claim, except for a claim entitled to Priority pursuant to 11 U.S.C. § 507(a)(8), shall be paid in full upon the later of the Effective Date and the date which is fifteen (15) days after the date upon which such Priority Claim becomes an Allowed Priority Claim.  To the Debtors' knowledge, there are no non-tax Allowed Priority Claims in this case.

4.04 <u>Priority Tax Claims.</u> *<u>Upon</u> entry of the Confirmation Order, the State of Maine Bureau of Revenue Services ("<u>Maine Revenue</u>") shall have an Allowed Priority Tax Claim in the Amount of $340,281.25 (the "<u>Maine Revenue Allowed Priority Tax Claim</u>"), which will be paid in full (with interest at the rate of 7% per*

*annum to be paid through the Fourth Annual Distribution), within five (5) years after the Michele Petition Date.  The balance of the Maine Revenue claims will be treated as general unsecured claims under Class J-9 of the Plan.*

*<u>Also upon</u> entry of the Order confirming the Plan, the United States of America, Internal Revenue Service ("<u>IRS</u>"), shall have an Allowed Priority Tax Claim in the Amount of $3,500 (the "<u>IRS Allowed Priority Tax Claim</u>"), which claim will be paid in full (with interest at the rate of 3% per annum to be paid through the Fourth Annual Distribution), within five (5) years after the Michele Petition Date.   The balance of the IRS claims will be treated as general unsecured claims under Class J-9 of the Plan.*

4.05   <u>United States Trustee Fees.</u> All fees required to be paid by 28 U.S.C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

# ARTICLE V
# TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

## 5.01 Claims and interests shall be treated as follows under this Plan:

| JOINT CLASSES (MICHELE & RALPH) | | | | |
|---|---|---|---|---|
| Class J-1 | **CLASS J-1:** Saco & Biddeford Savings Institute Allowed Secured Claim of $470,097.46, fully secured by the following collateral (collectively, the "SBSI Joint Collateral"): (1) Arundel Property owned by Michele & Ralph ($300,000); (2) Michele's 2004 KW ($38,000); (3) Michele's other 2004 KW ($38,000); (4) Michele & Ralph's Jointly Owned 2005 Heil ($35,000); (5) Michele's 2005 KW ($23,000); and (6) Lien Balance of $36,097.46 secured by 3rd Mortgage on Michele's Gorham Residence (Book 28505, Page 2) (leaves equity in Michele's Gorham property, for liquidation purposes, of $20,012.79). See Exhibit F-1 for allocation of assets to liens. | No | IMPAIRED | Secured Claim Allowed in the Amount of $470,097.46, fully secured by SBSI Joint Collateral. Upon confirmation, loan to be modified as follows: $470,097.46 to be repaid at 3.5% amortized over 30 years, with 360 payments of $2,110.95 principal and interest, and shall be paid directly by Debtors from business budget. |
| Class J-2 | Me CAP Allowed Secured Claim of $140,000, fully secured by Saco property owned by Ralph and Michele (formerly Holly's III). | No | IMPAIRED | Secured Claim Allowed in the Amount of $140,000, fully secured by Saco property formerly owned by Holly's III (now Michele & Ralph).  Upon confirmation, loan to be modified as follows: $140,000 to be repaid at 3.5% amortized over 30 years, with 360 payments of $628.66 principal and interest, and shall be paid directly by Debtors from business budget.  All Class J-2 mortgages and liens to be so |

| | | | | |
|---|---|---|---|---|
| | | | | modified upon confirmation. |
| Class J-3 | **Class J-3**: Key Bank Allowed Secured Claim of $165,815, fully secured by Michele's Biddeford property (Mortgage recorded at Book 14014, Page 575) and Ralph's Westbrook property. See <u>Exhibit F-2</u> for allocation of assets to liens. | No | IMPAIRED | Secured Claim Allowed in the Amount of $165,815, fully secured by Michele's Biddeford Property and Ralph's Westbrook Property. Upon confirmation, loan to be modified as follows:  $165,815 to be repaid at 3.5% amortized over 30 years, with 360 payments of $744.58 principal and interest, and shall be paid directly by Debtors from business budget. |
| Class J-4 | **Class J-4**, Pacaar Secured and Unsecured Claims, partially secured by 2012 Kenworth Truck ($78,000 value). | No | IMPAIRED | This Class shall have an Allowed Secured Claim in the amount of $78,000 value of collateral, and an Allowed General Unsecured Claim under Class J-9 in the amount of $22,000 pursuant to Code section 506(d).  Secured portion of loan shall be modified upon confirmation, as follows:  Allowed Secured Claim of $78,000 shall be repaid at 4.25% interest amortized over 7 years, with 84 payments of $1,075.17 principal and interest, directly by Debtors through their business budget.  All liens in excess of $78,000 collateral value shall be avoided in full under Code section 506(d) upon confirmation. |
| Class J-5 | **Class J-5**, Pacaar Secured and Unsecured Claims, partially secured by 2011 Kenworth Truck ($107,000 value). | No | IMPAIRED | This Class shall have an Allowed Secured Claim in the amount of $107,000 value of collateral, and an Allowed General Unsecured Claim under Class J-9 in the amount of $33,000 pursuant to Code section 506(d).  Secured portion of loan shall be modified upon confirmation, as follows:  Allowed Secured Claim of $107,000 shall be repaid at 4.25% interest amortized over 7 years, with 84 payments of $1,474.91 principal and interest, |

| | | | | |
|---|---|---|---|---|
| | | | | directly by Debtors through their business budget. All liens in excess of $107,000 collateral value shall be avoided in full under Code section 506(d) upon confirmation. |
| Class J-6 | **Class J-6** Daimler CFS Allowed Secured Claim of $20,056.06, fully secured by Jointly Owned 2008 Freightliner. | NO | IMPAIRED | Secured Claim Allowed in the Amount of $20,056.06, fully secured by jointly owned 2008 Freightliner. Upon confirmation, loan to be modified as follows: $20,056.06 to be repaid at 4.25% interest amortized over 7 years, with 84 payments of $276.46 principal and interest, and shall be paid directly by Debtors from business budget. |
| Class J-7 | **Class J-7:** Daimler CFS previously secured claim, previously secured by 2009 Freightliner. CLAIM SATISFIED IN FULL. | NO | IMPAIRED | All Claims in this class have been satisfied in full and will be DISALLOWED in full upon confirmation. |
| Class J-8 | **Class J-8**: Bank of America, N.A., Secured and Unsecured Claims, secured by Mercedes Benz which has been surrendered. | NO | IMPAIRED | Collateral Surrendered In Full Satisfaction of any and all claims. |
| Class J-9 | General Unsecured Claims | Yes | Holders of Allowed Unsecured Claims will receive pro rata distributions from Plan Cash, after payment of Counsel Fees, 503(b)(9) Claims, and Priority Tax Claims, once annually for 6 years beginning | Class J-9 |

| | | | twelve months after the Initial Distribution Deadline. Upon completion of each Annual Distribution, Michele's counsel shall transmit a disbursement report to the U.S. Trustee's Office. | |
| | | | | |

| MICHELE CLASSES | | | | |
| --- | --- | --- | --- | --- |
| Class # | Description | Insider? | Impairment | Treatment |
| Class M-1 | **Class M-1**, Bangor Savings Bank Allowed Secured Claim of $394,526.31, fully secured by first mortgage on Michele's Gorham Residence, by virtue of a Mortgage recorded in the Cumberland County Registry of Deeds in Book 26998, Page 51. | No | IMPAIRED | This Class shall have an Allowed Secured Claim as filed (Claim No. 9), fully secured by first mortgage on Gorham residence. Michele to retain collateral and repay according to terms of loan, except as otherwise may be agreed by Michele and Class M-1 Creditor. Michele shall remain solely responsible for this loan, to be repaid directly by her from her personal budget. |
| Class M-2 | **Class M-2,** Bangor Savings Bank Allowed Secured Claim of $109,363.44, fully secured by second mortgage on Michele's Gorham Residence, by virtue of a Mortgage recorded in the Cumberland County | No | IMPAIRED | This Class shall have an Allowed Secured Claim as filed (Claim No. 10), fully secured by second mortgage on Gorham residence. Michele to retain collateral and repay according to terms of loan, except as otherwise may be agreed by Michele and Class M-2 Creditor. Michele shall remain solely responsible for this loan, to be |

| | | | | |
|---|---|---|---|---|
| | Registry of Deeds in Book 26998, Page 69. | | | repaid directly by her from her personal budget. |
| Class M-3 | **Class M-3.** Secured and unsecured claims of City of Saco, secured by virtue of statutory liens for unpaid real estate taxes against Michele's real estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347). | No | IMPAIRED | Collateral Surrendered in full satisfaction of all claims, and upon confirmation the City of Saco shall have no claims whatsoever against the Debtors or property of their estates on account of the Smutty Lane real estate taxes and charges. |
| Class M-4 | **Class M-4.** Secured claims of One West Bank [See Claim Transfer at DE # 91, referencing transfer of Claim 2 [sic] to Ocwen Loan Servicing, LLC, secured by first mortgage against Michele's real estate at Smutty Lane, Saco, Maine, by virtue of Mortgage from Michele to Evest Lending, Inc., recorded in the York County Registry of Deeds in Book 15093, Page 349, against Michele Leo's real estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347). | No | IMPAIRED | Collateral Surrendered in full satisfaction of all claims (including without limitation Michele Claim No. 3), and upon confirmation this class shall have no claims whatsoever against the Debtors or property of their estates other than the surrendered real estate. |
| Class M-5 | **Class M-5.** Secured claims of Green Tree Servicing LLC, secured by second mortgage against Michele's real estate at Smutty Lane, Saco, Maine, by virtue of a Mortgage from Michele to National City Mortgage, a division of | No | IMPAIRED | Michele Leo's Real Estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347) to be surrendered to Class M-5 creditor in full satisfaction of all Class M-5 claims (including without limitation Michele Leo Claim No. 15). Collateral Surrendered in full satisfaction of all claims (including without limitation Michele Claim No. 15), and upon |

| | | | | |
|---|---|---|---|---|
| | National City Bank, recorded in the York County Registry of Deeds in Book 15093, Page 372, and assignments recorded in Book 15180, Pages 240 and 241 , against Michele Leo's real estate located at 45 Smutty Lane, Saco, Maine (Book 15093, Page 347). | | | confirmation this class shall have no claims whatsoever against the Debtors or property of their estates other than the surrendered real estate. |
| Class M-6 | **Class M-6.**  Secured and unsecured  claims of Keybank, N.A., secured by virtue of a UCC-1 financing statement from Debtor Michele M. Leo to Keybank, National Association; **File #:** 2080001937526, secured by personal property (2008 Infinity 20 x 40) located At 45 Smutty Lane, Saco, Maine (Book 15093, Page 347). | No | IMPAIRED | Collateral to be surrendered to Class M-6 creditor in full satisfaction of all Class M-6 claims (including without limitation Michele Leo Claim No. 8).  Upon confirmation this class shall have no claims whatsoever against the Debtors or property of their estates other than the surrendered collateral. |
| Class M-7 | **Class M-7.**  Secured and unsecured claims of the State of Maine, Department of Labor, previously purportedly secured by lien that has been satisfied and discharged. | No | IMPAIRED | CLAIM SATISFIED IN FULL AND LIEN DISCHARGED.  ALL CLAIMS DISALLOWED IN FULL. |
| Class M-8 | Equity interest holder: Michele M. Leo | YES | UNIMPAIRED | Upon entry of the Confirmation Order, all property of Michele Leo's estate (including without limitation all property formerly owned by Holly's Supergas, and a one-half interest in all property formerly owned by Hollys LLC, Hollys II, LLC & Hollys III, LLC), shall vest in Michele Leo, free and clear of all liens, claims and encumbrances, except to the extent provided in the Plan. |

| RALPH LEO CLASSES | | | | |
|---|---|---|---|---|
| Class R-1 | **Class R-1**, Saco Biddeford Savings Institution, Allowed Secured Claim of $723,000, fully secured by first mortgage against Ralph's mixed use real estate located at 80 Dow Road, Gorham, Maine. | No | IMPAIRED | Class R-1 shall have an Allowed Secured Claim in the amount of $723,000.  Upon confirmation the loan shall be modified as follows: Principal balance of $723,000 to be amortized over 30 years at 3.5% per annum with monthly payments of $2,000 for the first 72 months followed by equal payments of principal and interest for the remaining 288 months. Ralph to remain solely responsible for repayment of the Class R-1 loan, and shall make payments directly to creditor from his personal budget. |
| Class R-2 | **Class R-2**, Secured and Unsecured Claims of Scott A. Guimond and Kathleen M. Guimond, purportedly secured by Ralph's mixed use real estate located at 80 Dow Road, Gorham, Maine. | No | IMPAIRED | Class R-2 claims shall be treated as wholly unsecured under Class J-9, with an Allowed General Unsecured Claim in the Amount of $162,000.  All mortgages and liens shall be avoided in their entirety upon confirmation pursuant to Code Section 506(d). |
| Class R-3 | **Class R-3**, Secured Claims of Key Bank in the amount of $50,000, fully secured by 2nd mortgage against Ralph's real estate in Westbrook, Maine.  For Allocation of Assets to Loan Value, see Exhibits F & F-2. | No | IMPAIRED | Class R-3 shall have an Allowed Secured Claim in the amount of $50,000 fully secured by Ralph's Westbrook Real Estate.  Upon confirmation the loan shall be modified as follows:  $50,000 to be repaid at 3.5% amortized over 30 years, with 360 payments of $224.52 principal and interest, to be paid directly by both Debtors through their business budget. |

| Class R-4 | **Class R-4**, Secured and unsecured claims of Ally, partially secured by Ralph's 2013 GMC 1-ton Sierra Denali [VIN #1GT426E89DF130116] | No | IMPAIRED | Class R-4 shall have an Allowed Secured Claim in the amount of $40,000 (value of collateral), and the $40,000 loan shall be modified as follows: $40,000 loan balance to be repaid at 3.9% interest over 7 years, with 84 monthly principal and interest installments of $544.91.  Ralph shall remain solely responsible for repayment of the R-4 Allowed Secured Claim, and shall make payments directly to creditor from his personal budget.  Upon confirmation, all liens in excess of $40,000 shall be avoided pursuant to Code section 506(d), and the $16,841.62 balance of the Class R-4 claims (including Claim No. 6) shall be treated as an Allowed Secured Claim under Class J-9. |
| Class R-5 | **Class R-5**, Secured and unsecured claims of Ally, partially secured by Ralph's 2013 GMC 1-ton Sierra Denali [VIN # 1GT426C8XDF110265] | No | IMPAIRED | Collateral shall be surrendered to Class R-5 creditor in full satisfaction of any and all claims (including Claim No. 5) against the Debtors or their estates or property thereof (other than the collateral). |
| Class R-6 | **Class R-6.**  Secured and unsecured claims of Bank of America, secured by Ralph's repossessed 2004 Dutch Star | No | IMPAIRED | Collateral shall be surrendered to Class R-6 creditor in full satisfaction of any and all claims against the Debtors or their estates or property thereof (other than the collateral). |
| Class R-7 | **Class R-7**.  Secured and unsecured claims of Fifth Third Bank, secured by Ralph's repossessed Renegade Trailer | No | IMPAIRED | Collateral shall be surrendered to Class R-7 creditor in full satisfaction of any and all claims against the Debtors or their estates or property thereof (other than the collateral). |

| Class R-8 | Equity interest holder:<br><br>Ralph Leo | YES | UNIMPAIRED | Upon entry of the Confirmation Order, all property of Ralph Leo's estate (including without limitation all property formerly owned by Ralph's Used Cars, and a one-half interest in all property formerly owned by Hollys LLC, Hollys II, LLC and Hollys III, LLC), shall vest in Ralph Leo, free and clear of all liens, claims and encumbrances, except to the extent provided in the Plan. |
|---|---|---|---|---|

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01  Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest have filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

6.02  Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is an Allowed Claim.

6.03  Settlement of Disputed Claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

6.04  Claims Subject to Allowance. Notwithstanding any other provision of the Plan, no distribution shall be made on account of any Claim until such Claim is Allowed.

6.05  Prepetition Claim and Amendments. Each Claim as to which a proof of claim was required to be filed on or before the Bar Date and as to which a proof of claim

was not filed on or before the Bar Date shall not under any circumstances become an Allowed Claim.

6.06  Objections to Prepetition Claims and Interests. Claims and Interests that arose prior to the Petition Date, and which have not been scheduled by the Debtors as contingent, unliquidated or disputed, or as to which a valid proof of claim or interest has been filed on or before the Bar Date, shall be allowed in full, unless an objection to such Claim or Interest is filed on or before ninety (90) days after the Confirmation Date or such other date as is provided by Order of the Bankruptcy Court upon motion of the Debtors. Claims that have been objected to and not allowed shall have no right to vote with respect to the acceptance or rejection of this Plan, except as otherwise ordered by the Court.

6.07  Bar Date and Objections With Respect to Post-Petition Claims. Any Claim entitled to priority under Bankruptcy Code Section 507(a)(1) arising before the Confirmation Date and still outstanding 60 days thereafter shall be forever barred unless it is the subject of a proof of claim (or, in the case of a Fee Claim, an application for compensation) filed with the Bankruptcy Court on or before the Post-petition Bar Date. Any Claim that is the subject of such a proof of claim (or application for compensation) shall be Allowed in full unless an objection thereto is filed within 30 days after the Post-petition Bar Date or such other date as is provided by Order upon motion of the Debtor, except that Fee Claims shall be Allowed only by Order of the Bankruptcy Court.

## ARTICLE VII

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01     Assumed Executory Contracts and Unexpired Leases.

(a) The Plan provides for the assumption of no executory contracts, Assumption means that the Debtors have elected to continue to perform the obligations

27

under such contracts and unexpired leases, and to cure defaults of the type
that must be cured under the Code, if any.   **Any and all other executory
contracts of the Debtors will be <u>rejected</u> upon confirmation under
the Plan.  Consult your adviser or attorney for more specific
information about particular contracts or leases.**

If you object to the rejection of your contract or lease, you must file and serve
your objection to the Plan within the deadline for objecting to the confirmation of the
Plan.

**The Deadline for Filing a Proof of Claim on a Claim Arising from the
Rejection of a Lease or Contract is thirty (30) days after confirmation of the
Plan.** Any claim based on the rejection of a contract or lease will be barred if the proof
of claim is not timely filed, unless the Court orders otherwise.

<u>(b)</u> The Debtors will be conclusively deemed to have rejected all executory
contracts and/or unexpired leases not expressly assumed under section
7.01(a) above, or before the date of the order confirming this Plan, upon the
Confirmation Date. A proof of claim arising from the rejection of an
executory contract or unexpired lease under this section must be filed no
later than thirty (30) days after the Confirmation Date.

## ARTICLE VIII
## <u>MEANS FOR EXECUTION OF THE PLAN; MERGER</u>

8.1  The funds necessary for the Debtors to execute and implement the Plan will

come from the following sources: (a) income generated from Debtors' employment

before and after the Confirmation Date; (b) income generated from Debtors' operation

of their businesses; (c) assumption or rejection of certain contract and lease

obligations, if any; (d) proceeds of causes of action and claims which the Debtors may

elect to bring for recovery pursuant to state law and/or Sections 506, 544, 547, 548,

549, and 550 of the Bankruptcy Code (but the Debtors are not hereby undertaking any

duty or obligation to any party to bring any such action or claim, and no such action or

claim is being hereby waived or released by the Debtors); (d) proceeds from the sale of

any property for which this Plan provides for the sale; (e) rentals from any property

for which this Plan provides for the rental; and (f) any other funds generated or

received by the Debtors and not allocated or paid pursuant to this Plan that may

become available.

8.2  On the Effective Date, all assets of the Debtors, including, without limitation, all property of the Debtors' estates (including, without limitation, each of the Debtors' respective interests in all property formerly owned by Holly's, Holly's Supergas, Hollys, II, LLC, and Hollys' III, LLC shall vest in the Debtors', according to their respective interests, as tenants in common, except that all property owned individually by Michele to the exclusion of Ralph, shall vest in Michele, and all property owned individually by Ralph, to the exclusion of Michele, shall vest in Ralph, free and clear of all Liens and/or Claims of creditors pursuant to 11 U.S.C. § 1141(b) except as set forth in this Plan.

## ARTICLE IX
## GENERAL PROVISIONS

9.01 <u>Effective Date of Plan.</u> The Effective Date of this Plan is the fifteenth calendar day following the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

9.02  <u>Severability.</u> If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.03  <u>Captions.</u> The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.04  <u>Controlling Effect.</u> Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maine govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.05  <u>Legally Binding Effect.</u> The provisions of the Plan shall bind all holders of Claims and Interests, whether or not they accept the Plan.

9.06  <u>Means of Cash Payment.</u> Cash payments made pursuant to the Plan will be in United States funds, by the means agreed to by the Debtors and the respective holders of Allowed Claims, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Debtor shall reasonably determine.

9.07 <u>Delivery of Distributions.</u> Except as otherwise provided in this Plan, distributions and deliveries to holders of Allowed Claims will be made by the Debtors (i) at the addresses reflected in the proofs of claim filed by the holders of Allowed Claims (or at the last known address of such Holder if no proof of claim or motion requesting payment is filed, or if the Debtors have been notified in writing of a change of address); (ii) at the addresses set forth in any written notice of address changes delivered to the Debtor after the date of any related proof of claim; or (iii) at the addresses reflected in the schedules filed by the Debtors if no proof of claim has been filed and the Debtors have not received a written notice of change of address.

9.08  <u>Undeliverable Distributions.</u> If payment or Distribution to any Holder of an Allowed Claim under the Plan is not deliverable at any of the addresses set forth in the preceding paragraph and/or is returned to the Debtors for lack of a current address for the Holder or otherwise, the Holder shall have one hundred twenty (120) days after the check issuance date to notify the Debtors in writing of the Holder's then current address. In the event that the Debtors have not received written notice of such address change from the Holder within one hundred twenty (120) days after the check issuance date, the Debtors shall void the returned check or payment, and shall be relieved of any obligation to make any further payments or distributions otherwise

due to the Holder, all of which payments or distributions shall be forever forfeited by the Holder. All payments or distributions so forfeited shall thereafter be distributed in future scheduled distributions to the remaining Holders in the appropriate Class or Classes, and the Allowed Claims of the Holder whose check was returned shall be deemed satisfied to the same extent as if payment or distribution had been made to the Holder whose cheek was returned, and all Claims of the Holder whose check was returned (including Claims to such distributions) shall be discharged and forever barred. In the event payments or distributions from the Final Distribution are returned to the Debtors and forfeited pursuant to the provisions of this paragraph, all funds so forfeited shall be returned to and retained by the Debtors as their sole and exclusive property.

9.09 <u>Time Bar to Cash Payments.</u> Checks issued by the Debtors in respect of distributions to Holders of Allowed Claims pursuant to this Plan shall be null and void if not cashed within one hundred twenty (120) days of the date of their issuance. Requests for reissuance of any check must be made in writing to the Debtors by the Holder of the Allowed Claim with respect to which the original check was issued, within one hundred eighty (180) days after the date of issuance of the original check. If no request for reissuance is received by the Debtors within one hundred eighty (180) days after the date of issuance of the original check, all claims in respect of void checks will be discharged and forever barred, and the funds remaining from such void checks shall be forever forfeited by the Holders of Allowed Claims whose checks were voided. All funds so forfeited shall thereafter be distributed in future scheduled distributions to the Holders of Allowed Claims pursuant to the terms of this Plan. In the events that (1) checks issued <u>for the Final Distribution</u> are not cashed within 120 days after the date of issuance; and (2) no request in writing for reissuance of such check(s) is

received by the Debtors within one hundred eighty (180) days after the check issuance date; then, such check(s) shall also be voided by the Debtors and the funds remaining shall be returned to and retained by the Debtors as their sole and exclusive property.

9.10  <u>De Minimis Distributions.</u> "De Minimis Distributions" shall refer to any distribution where the amount due to the creditor for such distribution is less than $10.00. No De Minimis Distributions will be made by the Debtors to any Holder of Allowed Claims unless and until such Holder makes a request in writing to the Debtors to make such De Minimis Distributions. At the time of any distribution under this Plan, the Debtors shall have the discretion for purposes of administrative efficiency to pay Holders of Allowed Claims whose total projected future distributions equal $100 or less, in a single distribution equal to the amount of all projected future distributions that would otherwise be due to such Holders, in full satisfaction of all of such Holders' Allowed Claims.

9.11  <u>No Interest on Claims.</u>  Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder of a Claim and approved by the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim, whether such Claim is an Allowed Claim or a Disputed Claim.

9.12  <u>Disputed Claims Reserve.</u> At the time of each distribution for which Disputed Claims exist, the Debtor shall maintain a reserve (the <u>"Disputed Claims Reserve"</u>) equal to 100% of the distribution to which Holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were then Allowed Claims, or such lesser amount as required by a Final Order. The Holder of a Disputed Claim that becomes an Allowed Claim shall receive distributions of Cash from the Disputed

Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based upon distributions that would have been made to such Holder(s) under the Plan if the Disputed Claim had been an Allowed Claim on the Effective Date. No Holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, with respect to such Claim, unless and until such Disputed Claim shall become an Allowed Claim. If at the time of the Final Distribution funds remain in the Disputed Claims Reserve because one or more Disputed Claims has not become an Allowed Claim(s) as of the date the Final Distribution is due to be made under the terms of this Plan, the funds so remaining shall be distributed as part of the Final Distribution to the Holders of Allowed Claims.

9.13 <u>Modification of Confirmed Plan.</u> After the Confirmation Date, the Debtors may modify the Plan under Section 1127 of the Bankruptcy Code and may remedy any defect or omission or reconcile any inconsistency in the Plan or in the Confirmation Order in such manner as may be necessary or appropriate to carry out the purposes and intent of the Plan, so long as the interests of holders of Claims and Interests are not materially and adversely affected thereby.

9.14 <u>Substantial Consummation.</u> For purposes of Section 1101(2), the Plan shall be deemed to have been substantially consummated when all of the following conditions have been satisfied: (a) the Effective Date has occurred, (b) all payments and conveyances required to be made on or prior to the Effective Date with respect to Claims then or theretofore Allowed have been made, (c) all documents required to be executed and delivered on or prior to the Effective Date with respect to Claims then or theretofore Allowed have been executed and delivered, and (d) all the requirements of 1i U.S.C. §

1101(2) have been satisfied.

9.15  <u>Closing of Case.</u> The Debtors shall file with the Bankruptcy Court a final accounting in accordance with D. Me. LBR 3022-1, accompanied by a proposed final decree making provisions by way of injunction and closing the case. The Debtors shall seek to close the case following completion of the Initial Distribution, with the case to be re-opened upon completion of all Distributions for the issuance of the Debtors' discharge.

9.16  <u>Dates.</u> Whenever the Plan requires the Debtors or any other entity to make a distribution or take some other action on a particular date, such action shall be taken on the required date unless parties-in-interest agree otherwise.

9.17  <u>Property of the Debtors.</u> Upon entry of the Confirmation Order, all property of the Debtors' estates shall vest in the Debtors, free and clear of all liens, claims and encumbrances, except to the extent otherwise provided in the Plan.

9.18  <u>Retained Jurisdiction.</u> To the maximum extent permitted by applicable law, the Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes:

(a)  to consider and approve any amendment, modification or correction of the Plan, subject to the restrictions set forth in Bankruptcy Code Section 1127 and any modification of the Confirmation Order;

(b)  to hear and determine all Fee Claims and all objections filed by the Debtors with respect to Claims other than Fee Claims;

(c)  to hear and determine all adversary proceedings, contested matters, or other actions commenced in the Bankruptcy Court by the Debtors against any party and pertaining to any matter, including, without limitation, proceedings for recovery of assets or avoidance of obligations or liens under Sections 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code, proceedings relating to the assumption or rejection of Executory Contracts and Unexpired Leases, and proceedings relating to the enforcement by any creditor of any remedy against the Debtors;

(d)  to hear and determine any disputes arising under the Plan, its

implementation and the execution of any necessary documents thereunder;

(e)     to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate;

(f)     to enforce all injunctions and stays granted under this Plan or the Bankruptcy Code, and to enforce the discharge provisions of the Bankruptcy Code and the Plan; and

(g)     to make such Orders as are necessary and appropriate to carry out and implement the provisions of the Plan.

## ARTICLE X
## INJUNCTION, STAY AND DISCHARGE

10.01 **Effect of Confirmation.**  Upon entry of this Confirmation Order the terms of the Plan will bind the Debtors and the holders of all claims against the Debtors, whether or not those claim holders filed a proof of claim or voted in favor of the Plan. Once the Debtors complete all payments required by the Plan, the Debtors may seek the entry of a discharge order enjoining all claim holders from any action to enforce a claim or collect any debt owed by the Debtors prior to confirmation.  Pending entry of a discharge order, the terms of the Plan replace any and all repayment terms which existed between the Debtors and their creditors prior to confirmation, unless the Court orders otherwise, and except as expressly provided in the Plan.  The Court retains jurisdiction to resolve any disputes which arise with respect to the terms of the Plan and the compliance of all parties therewith.

10.02 Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of

Bankruptcy Procedure. Upon issuance of the Discharge, except as expressly provided in the Plan, the Debtors shall, as of the date of such Discharge, have the full benefit of the discharge provided by Section 1141(d) of the Bankruptcy Code. Without limiting the generality of the foregoing (and except as provided in the Plan), the Debtors shall be permanently released and discharged from all liens, Claims, Encumbrances, and debts that arose before the Confirmation Date whether or not any such lien, Claim, Encumbrance, or debt has been scheduled by the Debtor, a proof of claim has been filed or deemed filed, any such Claim is Allowed, or the holder of any such Claim has accepted the Plan.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Respectfully submitted this 18th day of December, 2013,

By Plan Proponents,

Debtor                                          Michele's Counsel:

/s/ **Michele M. Leo**                          /s/ **James F. Molleur**
Michele M. Leo                                  James F. Molleur, Esq.
                                                Molleur Law Office
                                                419 Alfred Street
                                                Biddeford, ME 04005
                                                207-773-7500
                                                207-283-4558 (facsimile)
                                                jim@molleurlaw.com

Debtor                                          Ralph's Counsel:

/s/ **Ralph Leo**                               /s/ **Andrew Kull**
Ralph Leo                                       Andrew Kull, Esq.
                                                Mittel Asen, LLC
                                                85 Exchange Street
                                                Portland, ME 04101
                                                (207) 775-3101
                                                akull@mittelasen.com