UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| In re:<br><br>**Michele M. Leo**<br><br>Debtor | Chapter 11<br><br>Case Nos. 13-20157 & 13-20942 |
| In re:<br><br>**Ralph Leo**<br><br>Debtor | (JOINTLY ADMINISTERED) |

**ORDER CONFIRMING DEBTORS'
FIRST AMENDED JOINT PLAN OF REORGANIZATION
DATED DECEMBER 17, 2013**

This Court having entered its order ("Approval Order") approving the adequacy of the Debtors' First Amended Disclosure Statement dated October 30, 2013 (as amended pursuant to the hearing held on December 16, 2013, the "Disclosure Statement") with respect to the Debtors' First Amended Joint Plan of Reorganization Dated December 17, 2013 (as amended by this Confirmation Order, the "Plan"); the Disclosure Statement and Exhibits A, B, C, D, E, F, G, H, I and J thereto, the Plan, ballots for voting, a Notice of Hearing on Confirmation of the Plan, the Approval Order, and a copy of the Debtors' Proposed Order Confirming the Plan as filed with the Court on December 18, 2013 and all other documents required to be served prior to confirmation of the Plan (collectively, the "Plan Documents"), having been timely and adequately served and transmitted to all known creditors, holders of interests and other interested parties; after such notice and opportunity for hearing as was required by the United States Bankruptcy Code, 11 U.S.C. §§ 1101-1330 (the "Code"), the Federal Rules

1

of Bankruptcy Procedure, and this Court's local rules; this Court having convened a hearing on May 15, 2014 to consider the Plan and the Debtors' request for confirmation of the Plan (the "<u>Hearing</u>"); this Court therefore hereby **FINDS, ORDERS, ADJUDGES and DECREES** as follows:

## I.    FINDINGS OF FACT

1. The Court hereby finds that all Classes entitled to vote, who voted, ACCEPTED the Plan by a majority in number and more than two thirds in amount of the total voting claims pool in this case; and

2. The Court hereby further finds, based on the representations of counsel and the Counsel to the Debtors' Certification of Voting and other documents submitted to the Court by the Debtors in support of the Plan prior to the Hearing, (ii) the uncontroverted proffers made by counsel for the Debtors at the Hearing; and (iii) this Court's independent review of the Plan, that good adequate and sufficient cause exists to CONFIRM the Plan; and

3. The Court hereby further finds that, in accordance with the terms and provisions of the Approval Order, the Debtors having mailed true and correct copies of all Plan Documents to all known Holders of Claims against the Debtors, and to all other parties in interest (including all parties who have filed a notice of appearance in the Case) entitled to receive copies of same; the Approval Order having set February 25, 2014 as the deadline to object to the Plan and the deadline for filing written acceptances and rejections of the Plan; the Court having held a Status Conference on March 11, 2014, and April 24, 2014 having been set as the extended deadline for creditors and other parties-in-interest to object to amendments to the Plan as set forth below in this Order, and to vote or change a previously cast vote for or against the Plan, as so amended; the

Court having considered the arguments of counsel for the Debtors, the evidence at the Hearing, and the materials filed in support of the Plan; and the Court having considered the Plan and the Disclosure Statement, the Court hereby makes the following additional findings of fact and conclusions of law, and enters the following order (the "Confirmation Order").

4. As required by § 1129(a)(1), the Plan complies with the applicable provisions of the Code, including, without limitation, §§ 1121, 1122 and 1123 thereof.

5. As required by § 1129(a)(2), the Debtors have complied with the applicable provisions of the Code.

6. As required by § 1129(a)(3), the Plan has been proposed in good faith and not by any means forbidden by law.

7. As required by § 1129(a)(4), all payments made or to be made by the Debtor for services or for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to this Chapter 11 Case, have been approved by or are subject to the approval of the Bankruptcy Court as reasonable.

8. Code section 1129 (a)(5) is satisfied in this case because the only "equity holders" or "insiders" are the Debtors themselves in these individual cases, so that section 1129(a)(5) is not applicable, except as follows: [N/A].

9. No regulatory approval is required to implement the Plan under § 1129(a)(6) of the Code.

10. The following classes are impaired under the Plan and the Holders of Claims and/or interests, as the case may be, in such classes are entitled to vote for acceptance or rejection of the Plan: (a) Classes J- through J-9 inclusive; (b) Classes M-1 through M-7 inclusive; and (c) Classes R-1 through R-7 inclusive (collectively, the

"Impaired Classes"). Code section 1129 (a)(7) is satisfied in this case because the Plan satisfies the Chapter 7 liquidation test. As required by § 1129(a)(7), all Impaired Classes have: (a) accepted the Plan; (b) have received or retained under the Plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under chapter 7; or (c) have otherwise satisfied the requirements of § 1129(a)(7). Each acceptance and rejection of the Plan has been solicited and procured by the Debtors in good faith and in accordance with the provisions of the Code.

11. As required by § 1129(a)(8), each class of Claims or interests have accepted the Plan, are not impaired under the Plan, or the Debtors have satisfied the requirements of § 1129(b) of the Code, to the extent applicable in these individual Chapter 11 cases.

12. Code section 1129 (a)(9) is satisfied in this case because (i) the only administrative or priority claims in these cases are those of (1) Debtors' counsel, who have agreed to take payments over time; and (2) the 503(b)(9) Creditors (as defined in the Plan) who have ACCEPTED their treatment under the Plan; and (ii) the only claims of a kind described in Code section 1129 (a)(9)(D)—the claims of the Internal Revenue Service and Maine Revenue Services—will be paid within the time frames required by Code section 1129(a)(9)(C).

13. As required by § 1129(a)(10) of the Code, at least one class of Claims that is impaired under the Plan has accepted the Plan, as determined without including any acceptance of the Plan by any insider.

14. As required by § 1129(a)(11), confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors.

15. As required by § 1129(a)(12), the Plan provides for the payment on the Effective Date of all United States Trustee Fees with respect to this Chapter 11 Case.

16. Section 1129(a)(13) is inapplicable to this case because the Debtors are individuals and it is not otherwise applicable because the Debtors have no obligations to pay retiree benefits.

17. Section 1129(a)(14) is satisfied in this case because the Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.

18. Code section 1129(a)(15) is only applicable to this case or implicated to the extent any holder of an allowed unsecured claim objected to the Plan, and either no objections were timely filed or such objections have been overruled, withdrawn, or otherwise resolved at or prior to the Hearing. See In re Sheridan, 391 B.R. 287, 289-90 (Bankr. E.D. N.C. 2008) (disposable income requirements of section 1129(a)(15) are not implicated where no party objects to plan). Moreover, even if section 1129(a)(15) were implicated here, the Court finds that the Debtors have satisfied the disposable income requirements of Code section 1129(a)(15), as shown on Exhibits G, H and I to the Disclosure Statement.

19. Code section 1129(a)(16) is not applicable to this case because the Plan does not provide for transfers of property by a corporation or trust.

**II.     CONCLUSIONS OF LAW**

1. The Plan, as amended by the terms of this Confirmation Order (if amended), complies with the applicable provisions of the Code.

2. All applicable requirements of section 1129(a) of the Code have been complied with, including section 1129(a)(8), such that Code section 1129(b) is not implicated here.

3. Further, even if Code section 1129(b) were implicated in this case, the Court finds that it is satisfied in this case insofar as each class of impaired creditors will receive more than those creditors would receive in a Chapter 7 liquidation pursuant to 11 U.S.C. § 1129(a)(7); the Plan does not discriminate unfairly, and it is fair and equitable with respect to any impaired class pursuant to 11 U.S.C. § 1129(b)(1) and (b)(2)(B)(ii); the absolute priority rule set forth in 11 U.S.C. § 1129(b)(2)(B)(ii) is inapplicable to this Chapter 11 case because the Debtors in this case are individuals exempted from that rule; and the Debtors have made sufficient proffers under 11 U.S.C. § 1129(b)(2) for the Plan to be confirmable under that section of the Code.

**It is therefore hereby FURTHER ORDERED, ADJUDGED AND DECREED as follows:**

A. The Plan, a true and correct copy of which is on file with the Court at Docket # 131, is hereby incorporated herein by reference and, as amended hereby (if amended), shall be and hereby is CONFIRMED.

B. All capitalized terms not otherwise defined in this Confirmation Order shall have the meanings ascribed to such terms in the Plan.

C. The Plan is hereby amended as follows:

(i) The Debtors have executed (or will execute at the hearing on confirmation) certain promissory notes (collectively, the "Notes") in favor of certain of the 503(b)(9) Creditors (as defined in the Plan), which Notes have been filed with the Court at DE Nos. 199 and 200. All terms and conditions of the Notes are hereby APPROVED AND RATIFIED in all respects, and shall be, and hereby are, INCORPORATED BY REFERENCE into, and made a part of, the Plan and this Confirmation Order, as if set forth in full. In addition, the Debtors are hereby ORDERED, AUTHORIZED and DIRECTED to take all steps necessary and execute all documents necessary to grant Global Companies, LLC a perfected first priority motor vehicle lien in their presently unencumbered 2008 Freightliner truck, VIN 1FVACXBS98HZ09553, to secure the Debtors' obligations to Global under the Plan, which security interest is hereby GRANTED and APPROVED in all respects.

(ii) The Plan's payment and distribution schedule is hereby MODIFIED as set forth in the distribution schedule (the "Amended Distribution Schedule", attached to this Order as Exhibit 1), the confirmed Plan is hereby amended to include the Amended Distribution Schedule, and all future distributions under the Plan shall be made pursuant thereto, except to the extent made sooner than contemplated, or to the extent of any post-confirmation modifications of the Plan hereafter duly approved by the Court, if any, pursuant to the terms of the Plan and the Code.

(iii) The Plan's treatment of the claims of the United States of America, Internal Revenue Service ("IRS") is hereby amended as follows: (a) having on January 7, 2014 amended its Claim (Claim No. 17) against Michele Leo by reducing the amount claimed to $0, it shall have no claims against the Debtors, their estates, or property thereof and the IRS shall not be entitled to any distribution under the Plan on account of any pre-confirmation claims; and (b) the distributions scheduled under the Plan shall be adjusted accordingly on account of the elimination of the IRS claims from the Plan's scheduled distributions.

(iv) Maine Revenue Services ("MRS") shall have the following allowed pre-confirmation claims: (1) a single Allowed combined Priority and Administrative claim in the total amount of $425,293.93 to be paid through the Plan distributions within five (5) years after the Michele Leo Petition Date (as defined in the Plan), with interest on such claim at the rate of 7% per annum to be paid as part of the final MRS distribution; and (2) a single Allowed General Unsecured claim under Plan Class J-9 in the total amount of $57,548.49. The distributions scheduled under the Plan shall be adjusted accordingly on account of the change in amount (from the originally proposed Plan) of the MRS Claim hereby allowed.

(v) PACCAR shall have an Allowed Secured Claim under Classes J-4 and J-5 (combined) in the total amount of $214,740.49 as of the Ralph Leo Petition Date (referred to herein as the "PACCAR Allowed Secured Claim"), fully secured by the Debtors' 2011 and 2012 Kenworth trucks, under PACCAR's two cross-collateralized loans. The Debtors shall repay the full amount of the PACCAR Allowed Secured Claim, directly through

their joint business budget, pursuant to the terms of the underlying loan documents. All terms of the underlying loan documents shall remain in full force and effect, and the loans shall not be modified as originally proposed in the Plan.

(vi) The treatment of the Class J-1 claims of Saco & Biddeford Savings Institution ("SBSI") set forth in the Plan is hereby amended as follows: (a) SBSI has and shall continue to have a first priority security interest in the Class J-1 collateral, until full payment of the debt, as described below, is paid or otherwise satisfied in full; and (b) the SBSI loans which are secured by said collateral shall be repaid by the Debtors through their joint business operations, and said loans are hereby modified as follows: (1) SBSI is hereby granted an Allowed Secured Claim in the amount of $463,369 due as of February 11, 2014, which loan amount shall be amortized over 25 years at 4% annual interest through March 4, 2018, and beginning April 4, 2014 the Debtors shall pay 48 monthly payments of principal and interest totaling $2,445.83 per month, plus any escrows required by SBSI under the terms of the loan documents; and (2) beginning on March 5, 2018, interest shall accrue on the amount of the debt then outstanding at the adjustable rate and terms set forth in the original Note, and the monthly principal and interest payment amounts to be paid by the Debtors shall be adjusted accordingly; and (3) the term of the loan is hereby extended such the same shall be 25 years from the date of the original loan;

(vii) An Order [DE # 166] having entered granting relief from stay to ME CAP, LLC ("ME CAP"), the Class J-2 Creditor, the treatment of the Class J-2 claims set forth in the Plan is hereby amended as follows, and nothwithstanding anything in the Plan to the contrary, the Class J-2 claims of Me CAP shall be treated as follows: All ME CAP collateral shall be surrendered by the Debtors, and by virtue of this Order and the Effective Date of the Plan all collateral of ME CAP is hereby surrendered and transferred to ME CAP, free from any and all transfer tax claims. Upon recording of this Order in the York County Registry of Deeds third parties may rely on this Order as conclusive evidence that all collateral of ME CAP, including the the land and buildings located at 952 Portland Road (Flag Pond Road), Saco, Maine, more fully described in a Quitclaim Deed with Covenants from MECAP, LLC to Hollys III, LLC, dated January 2, 2013, recorded January 8, 2013 in Book 16504, Page 262 (referred to herein as the "Saco Station") have been and hereby are surrendered and transferred to ME CAP. The surrender of the collateral shall be in full and final satisfaction of all of ME CAP's Class J-2 claims and neither the Debtors nor their estates, nor Hollys III, LLC, shall have any further liability thereon or on account thereof, provided however that ME CAP shall retain any contingent claim related to environmental liability to the extent of any available insurance policies of the Debtors. The Debtors are further hereby AUTHORIZED and DIRECTED, within ten (10) days after

the Effective Date of the Plan, to execute and deliver to ME CAP a quitclaim deed (without covenants) conveying all of the Debtors' and Hollys III, LLC's right, title and interest in the Saco Station to ME CAP, said deed to be in lieu of foreclosure and in full satisfaction of any and all obligations of the Debtors or their estates under this paragraph, and said transfer shall be free and clear of any and all transfer taxes.

(viii) The treatment of the Class J-3 claims of Key Bank is hereby amended as follows: Key Bank is hereby GRANTED an Allowed Secured Claim under Class J-3 of the Plan in the amount of $143,389.91 outstanding principal balance as of February 25, 2014, fully secured by the collateral set forth in the loan documents attached to the proofs of claim filed as Michele Claim # 24 and Ralph Claim #12. The Class J-3 claims hereby allowed, as a single claim, are hereby modified as follows: (1) the $143,389.91 principal amount of the Class J-3 claims shall be amortized over 15 years at 4.5% interest per annum, and the Debtors shall make 180 monthly payments of $1,097 principal and interest directly from the business budget, with said payments to commence on March 1, 2014, and to continue thereafter for the life of the six (6) year Plan. The full outstanding balance of the Class J-3 Allowed Secured Claim (after completion of the above-referenced payments and any additional payments the Debtors may elect to bring during the 6-year Plan period), including all reasonable attorneys fees and costs then due under the terms of the loan documents, shall then be due and payable, in full, on January 1, 2021.

(ix) The treatment of the Class R-1 claims of Saco & Biddeford Savings Institution ("SBSI") set forth in the Plan is hereby amended as follows: (a) SBSI has and shall continue to have a first priority, fully perfected, and fully secured security interest in the Class R-1 collateral, which shall have the same validity and priority as existed on the dates of execution and recording of SBSI's original loan documents and mortgage, until full payment of the debt, as described below, is paid or otherwise satisfied in full; and (b) the SBSI loans which are secured by said collateral shall be repaid by Ralph Leo through his personal budget, and said loans are to be modified as follows, and Ralph Leo is hereby AUTHORIZED, ORDERED and DIRECTED to execute any and all documents which SBSI deems necessary to confirm to the terms of this Order, said documents to be delivered at a closing required by SBSI (the "Closing"): (1) SBSI is hereby granted an Allowed Secured Claim in the amount of $716,300 due as of February 11, 2014, which loan amount shall be amortized over 30 years at 4.5% annual interest for five (5) years from Closing, during which time Ralph Leo shall make 60 monthly payments of $3,629 principal and interest, plus any escrows required by SBSI under the terms of the loan documents; and (2) after five (5) years, the interest rate on the loan shall adjust annually on the anniversary based on an index of the "Federal Home Loan Bank One Year Classic Advance Rate", with annual interest

rate increases not to exceed 1%, and a rate floor of 3.5% and a rate ceiling of 7.5%, and the monthly principal and interest payment amounts to be paid by Ralph Leo shall be adjusted accordingly.

(x)  The treatment of the Class R-3 claims of Key Bank is hereby amended as follows: Key Bank is hereby GRANTED an Allowed Secured Claim under Class R-3 of the Plan in the amount of $50,052.08 (as of February 25, 2014),, fully secured by the collateral set forth in the loan documents attached to the proof of claim filed as Ralph Claim No. 3. The Class R-3 claims hereby allowed, as a single claim, are hereby modified as follows: (1) the $50,052.08 principal amount of the Class R-3 claims shall be amortized over 15 years at 4.5% interest per annum, and the Debtors shall make 180 monthly payments of $391 principal and interest, directly from their business budget, said payments to commence on March 1, 2014, and to continue thereafter for the life of the six (6) year Plan. The full outstanding balance of the Class R-3 Allowed Secured Claim (after completion of the above-referenced payments and any additional payments the Debtors may elect to bring during the 6-year Plan period), including all reasonable attorneys fees and costs then due under the terms of the loan documents, shall then be due and payable, in full, on January 1, 2021.

(xi)  The treatment of the Class R-4 claim of Ally is hereby amended as follows: the claim shall be allowed against Mr. Leo as a secured claim in the amount of $56,841.62, secured by the 2013 GMC Sierra bearing vehicle identification number 1GT426E89DF130116. The claim shall be payable in 51 regular monthly installments at an annual interest rate of 3.8%, with equal monthly payments of $1,205.93. Payments shall commence and interest shall begin to accrue upon the first day of the first month following confirmation. If Mr. Leo makes any payments in a given calendar month prior to confirmation in the amount of $1,205.93 or more, then such payment shall be applied toward satisfaction of the claim, and interest shall begin to accrue on the claim as of the date of such payment.

(xii)  The Treatment of the Class R-5 Claim of Ally is hereby amended as follows: Collateral shall be surrendered to Class R-5 creditor in full satisfaction of the secured portion of Claim No. 5. As payment in full of the unsecured portion of Claim No. 5, Ally is further hereby GRANTED an Allowed general unsecured deficiency claim under Class J-9 of the Plan in the amount of $16,841.62 (estimated), on account of Ally's anticipated liquidation of the Class R-5 collateral which is being surrendered by Debtor Ralph Leo to Ally. The final amount of the general unsecured claim hereby allowed shall be determined after Ally liquidates the Class R-5 collateral and files (subject to the Debtors' review) an amended proof of claim; and

Irving Oil Terminals, Inc. ("Irving") is hereby GRANTED an Allowed General Unsecured Claim under Class J-9 of the Plan in the amount of $743,201.65.  **In addition, (1) Debtors (individually and jointly) and all their representatives, agents, heirs, and employees; (2) Debtors' related affiliates, entities, companies, corporations, partnerships, and joint ventures; (3) Debtors' individual, joint, or consolidated bankruptcy estates (as the case may be) within the meaning of the Code (§ 541 in particular); and (4) any and all representatives, officers, trustees, or other entities of or relating to such estate(s), including pursuant to §§ 701, 702, 703, 705, 1102, 1104 as the case may be (collectively, the "Releasing Parties"), HEREBY RELEASE AND FOREVER DISCHARGE IRVING and its related affiliates, entities, corporations, partnerships, joint ventures and their respective legal representatives, successors, directors, members, officers, assigns, employees, agents, contractors, insurers, sureties, and attorneys (collectively, the "Irving Released Parties"), from and against any and all claims, liabilities, demands, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, specialties, covenants, contracts, controversies, agreements, promises, doings, omissions, variances, damages, executions, fees, charges and complaints, of any nature or kind whatsoever, and whether known or unknown, liquidated or unliquidated, matured or unmatured, which any of the Releasing Parties has, or ever had, against any of the Irving Released Parties, including, but not limited to, any and all claims and liabilities arising out of, or related to, this Case, including any and all causes of action or claims arising under Chapter 5 of the Code or otherwise.**

(xiii)   Bangor Savings Bank, the Class M-1 and Class M-2 creditor, has been granted relief from the automatic stay to exercise its state law rights with respect to Michele Leo's real property located at 81 Finn Parker Road, Gorham, Maine, by order entered April 22, 2014 (DE # 188), the terms and provisions of which are hereby incorporated by reference into the Plan and this Order.  The treatment of the Class M-1 and M-2 claims set forth in the Plan is hereby AMENDED as follows:  Michele Leo shall surrender the Class M-1 and M-2 collateral to the Class M-1 and M-2

11

creditor in full satisfaction of all liens, claims, interests and encumbrances, and consent to judgment, including waiving the period of redemption and right of appeal, in any state court proceeding commenced by Bangor Savings Bank, upon such terms and conditions as Michele Leo and the Class M-1 and M-2 creditor shall hereafter agree.

D.    The Plan and its provisions shall be binding upon: (a) the Debtors; (b) any entity acquiring or receiving property (including Cash) under the Plan; (c) any lessor or lessee of real or personal property to or from the Debtors; and (d) any creditor of the Debtors, including, without limitation, any governmental unit, as such term is defined in Bankruptcy Code § 101(27), whether or not the Claim or interest of such creditor is impaired under the Plan and whether or not such creditor or governmental unit has accepted the Plan.

E.    Except as otherwise expressly provided in the Plan or this Confirmation Order, all property of the Debtors' estates shall, as of the Effective Date, revest in the Debtors free and clear of all interests, liens, claims and encumbrances of any kind and nature whatsoever, according to their respective ownership interest as the same existed immediately prior to the entry of this Order.  Without limiting the foregoing, the Court hereby Orders the limited substantive consolidation of the Debtors' estates to the full extent necessary to implement the terms of the Plan. ***The Debtors are hereby authorized to continue joint business operations to generate a single pool of Plan Cash with which to fund the Plan and the future distributions of Plan Cash to be made pursuant thereto to holders of Allowed Administrative and Priority Tax Claims, as well as General Unsecured Claims under Class J-9 of the Plan (which general unsecured claims are treated as a single pool of claims).  The***

12

***Debtors are further hereby authorized to fund through their joint business operations the payments of the Class R-3 secured claim (secured by collateral used in the joint business operations) and their joint secured claims (Classes J-1 through J-6), but the limited substantive consolidation hereby ordered will not affect, modify, discharge, reduce or expand the lien, mortgage or security interest of any secured creditor, nor shall the limited substantive consolidation of the Debtors' estates alter the Debtors' respective ownership interests in property of their estates. All assets that were jointly owned by the Debtors prior to confirmation are hereby vested in the Debtors jointly (each with a 50% ownership interest, held as a tenant in common), whereas those assets that were owned prior to confirmation by each individual Debtor in his or her own right, separate from the other, are hereby vested separately in each individual Debtor upon confirmation.***

F.    The Debtors are hereby authorized to make all payments provided for under the Plan, and take all other and further steps that may be necessary to effectuate the Plan, including, without limitation, the execution and delivery of any and all documents, notes, instruments, certificates, or other agreements necessary to implement the Plan.

G.    The Debtors are hereby further authorized to take such other and further actions as may be necessary to fulfill their obligations under the Plan, as clarified, modified, or amended by this Order; without limiting the foregoing, and in accordance

with the relevant provisions of the Plan, the Debtors are hereby authorized, without further order of this Court, to make all distributions and transfers of property required to be made under the Plan. Except as otherwise expressly provided in Bankruptcy Code § 1141, the Plan, or this Confirmation Order, the consideration to be paid and/or delivered by the Debtors pursuant to the Plan shall be paid and/or delivered, as the case may be, in full and final satisfaction, settlement, release and discharge as against the Debtors of any and all legal and/or equitable Claims against and interests in and to the Debtors, including, without limitation, any Claim or interest that arose before the Confirmation Date, and any debt of a kind specified in Bankruptcy Code §§ 502(g), 502(h) or 502(i), whether or not: (a) a proof of claim or interest is filed or deemed filed under Bankruptcy Code § 501; (b) such Claim or interest is allowed under Bankruptcy Code § 502; or (c) the Holder of such Claim or interest has accepted the Plan.

H. **Effect of Confirmation.** Upon entry of this Confirmation Order the terms of the Plan will bind the Debtors and the holders of all claims against the Debtors, whether or not those claim holders filed a proof of claim or voted in favor of the Plan. Once the Debtors complete all payments required by the Plan, the Debtors may seek the entry of a discharge order enjoining all claim holders from any action to enforce a claim or collect any debt owed by the Debtors prior to confirmation. Pending entry of a discharge order, the terms of the Plan replace any and all repayment terms which existed between the Debtors and their creditors prior to confirmation, unless the Court orders otherwise, and except as expressly provided in the Plan. The Court retains jurisdiction to resolve any disputes which arise with respect to the terms of the Plan and the compliance of all parties therewith.

I.   Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.   Upon issuance of the Discharge, except as expressly provided in the Plan, the Debtors shall, as of the date of such Discharge, have the full benefit of the discharge provided by Section 1141(d) of the Bankruptcy Code.  Without limiting the generality of the foregoing (and except as provided in the Plan), the Debtors shall be discharged from all debts that arose before the Confirmation Date whether or not a proof of claim based on any such debt is filed or deemed filed under section 501 of the Code,  any such Claim is Allowed, or the holder of any such Claim has accepted the Plan.

J.   Upon substantial consummation of the Plan, the Plan Proponents shall file with the Court a final account in accordance with District of Maine Local Bankruptcy Rule 3022-1, accompanied by a proposed final decree making provisions incorporating the terms of this order and closing the case.

K.   To the maximum extent permitted by applicable law, the Bankruptcy Court shall retain jurisdiction over the Case after the Confirmation Date for the following purposes: (i) to consider and approve any amendment, modification or correction of the Plan, subject to the restrictions set forth in Bankruptcy Code Section 1127 and any modification of the Confirmation Order; (ii) to hear and determine all Fee Claims and all objections filed by the Debtors with respect to Claims other than Fee Claims; (iii) to hear and determine all adversary proceedings, contested matters, or other actions commenced in the Bankruptcy Court by the Debtors against any party and

pertaining to any matter, including, without limitation, proceedings for recovery of assets or avoidance of obligations or liens under Sections 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code, proceedings relating to the assumption or rejection of Executory Contracts and Unexpired Leases, and proceedings relating to the enforcement by any creditor of any remedy against the Debtors; (iv) to hear and determine any disputes arising under the Plan, its implementation and the execution of any necessary documents thereunder; (v) to grant extensions of any deadlines set forth in the Confirmation Order as may be appropriate; (vi) to enforce all injunctions and stays granted under this Plan or the Bankruptcy Code, and to enforce the discharge provisions of the Bankruptcy Code and the Plan; and (vii) to make such Orders as are necessary and appropriate to carry out and implement the provisions of the Plan.

L.  In the event of any conflict between the provisions of this Confirmation Order and the provisions of the Plan, the provisions of this Confirmation Order shall prevail and take precedence over the provisions of the Plan.

M.  The terms and conditions of the Plan, including without limitation any and all provisions DISALLOWING any liens, claims, interests, and encumbrances, shall be and hereby are INCORPORATED BY REFERENCE into this Order as if set forth in full herein, and all such liens, claims, interests and encumbrances shall be and hereby are DISALLOWED to the full extent provided for in the Plan;

N.  Every mortgage and lien that is affected by the Debtors' Plan of reorganization is hereby modified pursuant to the Plan, to the full extent so provided in the Plan.  This Order, and the more detailed Plan, shall serve as *prima facie* evidence of the modifications of all loans, liens and mortgages which the Plan specifies will be modified.

O. As required by the Plan, the Debtors shall remain liable for the costs of maintaining property insurance and real estate taxes on the properties retained under the Plan; and

P. Pursuant to Rule 3020(e) of the Federal Rules of Bankruptcy Procedure, the Court orders that this Order shall not be stayed and shall be effective upon entry of the Order.

Dated  May 16, 2014

_____
Hon. Louis H. Kornreich
United States Bankruptcy Judge

**EXHIBIT 1 (AMENDED DISTRIBUTION SCHEDULE)**

| | |
|---|---|
| **INITIAL DISTRIBTION (120 DAYS AFTER EFFECTIVE DATE)** | $101,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($40,000) |
| • 503(b)(9) creditors | ($60,000) |
| • Maine Revenue Services priority claim installment | ($1,000) |
| Balance on hand following distribution | $0 |
| | |
| **FIRST ANNUAL DISTRIBUTION (1 YEAR AFTER INITIAL DIST. DEADLINE)** | $260,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($70,000) |
| • 503(b)(9) creditors | ($90,000) |
| • Maine Revenue Services priority claim installment | ($98,000) |
| • Class J-9 General Unsecured Creditors | ($2,000) |
| Balance on hand following distribution | $0 |
| | |
| **SECOND ANNUAL DISTRIBUTION (2 YEARS AFTER INITIAL DIST. DEADLINE)** | $260,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($30,000) |
| • 503(b)(9) creditors | ($80,000) |
| • Maine Revenue Services priority claim installment | ($148,000) |
| • Class J-9 General Unsecured Creditors | ($2,000) |
| Balance on hand following distribution | $0 |
| | |
| **THIRD ANNUAL DISTRIBUTION (3 YEARS AFTER INITIAL DIST. DEADLINE)** | $260,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($15,000) |
| • 503(b)(9) creditors | ($120,000) |
| • Maine Revenue Services priority claim (final principal installment) | ($123,000) |
| • Class J-9 General Unsecured Creditors | ($2,000) |
| Balance on hand following distribution | $0 |
| | |
| **FOURTH ANNUAL DISTRIBUTION (4 YEARS AFTER INITIAL DIST. DEADLINE)** | $260,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($10,000) |
| • 503(b)(9) creditors (FINAL PAYMENT) | ($73,003) |
| • Maine Revenue Services final principal payment | ($55,293.93) |
| • Maine Revenue Services priority claim (Interest) | ($98,662.88) |
| • Class J-9 General Unsecured Creditors | ($23,040.14) |
| Balance on hand following distribution | $0 |
| | |
| **FIFTH ANNUAL DISTRIBUTION (5 YEARS AFTER INITIAL DIST. DEADLINE)** | $155,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($10,000) |
| • Class J-9 General Unsecured Creditors | ($145,000) |
| Balance on hand following distribution | $0 |
| | |
| **FINAL DISTRIBUTION (6 YEARS AFTER INITIAL DIST. DEADLINE)** | $155,000 |
| • ADMINISTRATIVE CLAIMS OF ESTATE PROFESSIONALS | ($10,000) |
| • Class J-9 General Unsecured Creditors | ($145,000) |
| Balance on hand following distribution | $0 |

**EXHIBIT 1 (AMENDED DISTRIBUTION SCHEDULE)**

**DETAIL ON 503(b)(9) Payments**

| DISTRIBUTION DESCRIPTION / CREDITOR | AMOUNT |
|---|---|
| **INITIAL** | **$60,000** |
| • Global Companies, LLC (to be made on Effective Date, as defined in Plan Section 9.01) | ($42,000) |
| • Gulf Oil Limited Partnership | ($7,000.00) |
| • Dennis K. Burke, Inc. | ($11,000.00) |
| Balance | $0 |
| | |
| **FIRST ANNUAL** | **$90,000** |
| • Global Companies, LLC | ($41,674) |
| • Gulf Oil Limited Partnership | ($9,624.73) |
| • Dennis K. Burke, Inc. | ($38,701.65) |
| Balance | $0 |
| | |
| **SECOND ANNUAL** | **$80,000** |
| • Global Companies, LLC | ($41,674) |
| • Gulf Oil Limited Partnership | ($9,624.73) |
| • Dennis K. Burke, Inc. | ($28,701.65) |
| Balance | $0 |
| | |
| **THIRD ANNUAL** | **$120,000** |
| • Global Companies, LLC | ($41,674) |
| • Gulf Oil Limited Partnership | ($9,624.73) |
| • Dennis K. Burke, Inc. | ($68,701.65) |
| Balance | $0 |
| | |
| **FOURTH ANNUAL (FINAL 503(B)(9) DISTRIBUTION)** | **$73,003** |
| • Global Companies, LLC | $0 |
| • Gulf Oil Limited Partnership | ($9,624.73) |
| • Dennis K. Burke, Inc. | ($63,378.32) |
| Balance | $0 |
| | |